UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

STANLEY GANT,

        Petitioner,

   - against -

JAMES J. WALSH, Superintendent,
Sullivan Correctional Facility

        Respondent.

------------------------------------------------------------ X

**MEMORANDUM
AND ORDER**

07-CV-2427 (JG)

A P P E A R A N C E S :

   STANLEY GANT
     04A3219
     Sullivan Correctional Fac.
     PO Box 116
     Fallsburg, NY 12733-0116
     Petitioner, *Pro Se*

   CHARLES J. HYNES
     District Attorney
     Kings County
     350 Jay Street
     Brooklyn, NY 11201
   By: Thomas S. Burka
     Helen M. Polyzos
     Attorney for Respondent

JOHN GLEESON, United States District Judge:

    Stanley Gant, a prisoner incarcerated in the Sullivan Correctional Facility

pursuant to a judgment of the New York State Supreme Court, Kings County, petitions for a writ

of habeas corpus under 28 U.S.C. § 2254.  Gant challenges his conviction by a jury of two counts

of robbery in the first degree, in violation of N.Y. Penal Law § 160.15(3).  For the reasons set

forth below, the petition is denied.

BACKGROUND

A.      *The Facts*

        The government's evidence at trial established that on April 9, 2003, Gant robbed Jennifer St. Leger using a sharp object.  Ten days later, Gant robbed Susan Radin using a razor. Gant was indicted but not convicted for a third robbery, during which he allegedly grabbed Jennifer Way and "wrestled" her purse away.  In all three instances, a gray Buick Riviera was involved.   On May 9, 2003, the police arrested Gant after locating the Buick and matching his fingerprints to fingerprints recovered from the Buick.

        St. Leger and Way were each separately shown a photo array, but neither identified the perpetrator from the photos.[1]  Later that same evening, St. Leger, Way, and Radin, along with two other complainants, viewed a lineup that included Gant.  All five complainants waited together in a room before individually viewing the lineup.  Before they viewed the lineup, the complainants were not instructed to refrain from discussing the perpetrator or the identification procedure or results before viewing the lineup or after.  Transcript of *Wade* Hearing ("*Wade* Tr.") 58-59, Dec. 18, 2003.  Each complainant viewed the lineup individually, and afterward each was brought to a room on the second floor of the building, away from those who had not yet viewed the lineup.  *Wade* Tr. 54.  St. Leger, Way and Radin each identified Gant as the perpetrator.  The other two complainants failed to make an identification.

B.      *Procedural History*

        Gant was charged in an indictment with two counts of robbery in the first degree, three counts of robbery in the second degree, five counts of grand larceny in the fourth degree, two counts of criminal possession of a weapon in the fourth degree, and one count each of endangering the welfare of a child and robbery in the third degree.

---

[1]      Gant's photo was included in only one of the arrays.

2

On December 18, 2003, the state court conducted a *Wade* hearing in connection with Gant's motion to suppress the victims' lineup identifications of him. Detective Michael DeVepchis was the sole witness. Defense counsel requested that the three complainants be produced at the hearing for questioning about whether the lineup procedure was suggestive. *Wade* Tr. 87. Arguing that DeVepchis did not know and could not testify to the substance of the conversations among the five complainants before the viewings, defense counsel submitted that under *People v. Chipp*, 75 N.Y.2d 327 (1990), and *People v. Ocasio*, 628 N.Y.S.2d 651 (1st Dep't 1995), Gant was entitled to compel the complainants to testify because there were substantial issues as to the constitutionality of the lineup procedures. *Wade* Tr. 88. The hearing court denied this request. *Id.* at 90.

During trial, both St. Leger and Radin made in-court identifications of Gant as the person who robbed them, but Way failed to make such an identification. On May 24, 2004, the jury found Gant guilty of two counts of robbery in the first degree -- for the April 9 robbery of St. Leger and for the April 19 robbery of Radin. It found Gant not guilty of robbing Way. On May 27, 2004, Gant was sentenced as a persistent felony offender to concurrent terms of imprisonment of twenty-five years to life on both first-degree robbery counts.

On appeal to the Appellate Division, Second Department, Gant argued that the *Wade* hearing court improperly denied his request for production of the complainants. On February 28, 2006, the Appellate Division affirmed the convictions, finding that the hearing court had properly denied his request: "The hearing testimony of the detective who conducted the lineup identification did not raise substantial issues as to the constitutionality of the identification procedure and was not 'notably incomplete' . . . . [and his] testimony provided the hearing court with 'the factual detail necessary to assess whether the lineup procedure was

unduly suggestive." *People v. Gant* (*Gant I*), 809 N.Y.S.2d 584, 585-86 (2d Dep't 2006). Gant sought leave to appeal, again presenting the issue of whether the *Wade* hearing court improperly denied his request for production of the complainants. The New York Court of Appeals denied that application on June 5, 2006. *People v. Gant* (*Gant II*), 7 N.Y.3d 756 (2006) (G.B. Smith, J.).

On May 14, 2007, Gant filed a *pro se* motion in the New York Supreme Court to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. Gant raised two claims: (1) that the positive lineup identification was unduly suggestive; and (2) that he was denied effective assistance of counsel because counsel (a) failed to reopen the *Wade* hearing; (b) failed to present a compelling misidentification defense; (c) failed to interview alleged eyewitnesses who would have testified that Gant did not commit the robberies; (d) failed to request an unredacted version of the police Unusual Occurrence Report; (e) failed to interview the three complainants with respect to their initial descriptions of Gant, the nature of their conversations with the police prior to Gant's lineup, and the circumstances regarding their failure to sign the line-up report; and (f) failed to impeach the complainants with prior inconsistent statements. On September 20, 2007, the § 440 court denied Gant's *pro se* motion because all of the claims were either procedurally barred or without merit. *People v. Gant* (*Gant III*), Indictment No. 3367/03 (Kings County Sept. 20, 2007).

On June 11, 2007, Gant filed a habeas petition in this Court, seeking relief on same ground he advanced in his direct appeal. I held oral argument on October 24, 2007 during which Gant informed me that he was seeking leave to appeal the decision denying his § 440 motion. Gant further stated that he was planning to seek additional habeas relief on all of the state claims raised in his state § 440 motion not raised in his petition.

I then held the petition in abeyance pending the exhaustion in state court of Gant's § 440 motion, and further ruled that Gant would be allowed to supplement his pending habeas petition with the additional claims raised in the § 440 motion. I informed Gant that the claims made in the § 440 motion papers would be incorporated into his pending petition.

In *pro se* papers dated November 6, 2007, Gant moved in the Appellate Division, Second Department, for a writ of error *coram nobis*, claiming that appellate counsel was ineffective in handling his direct appeal because counsel failed to argue on appeal that Gant had received ineffective assistance of trial counsel because counsel (1) improperly waived defendant's right to testify before the Grand Jury at his proceedings against him; (2) delivered a "weak" opening statement resulting from counsel's failure to investigate Gant's alibi claim; (3) failed to vigorously cross-examine or impeach the eyewitnesses who had testified against him; (4) allowed Gant to be improperly adjudicated as a persistent violent felony offender at his sentencing proceedings; and (5) failed to properly advise Gant about the strengths and weaknesses of his case or about the consequences of refusing a plea offer and proceeding to trial instead.

On January 17, 2008, the Appellate Division denied Gant's *pro se* application for a certificate granting leave to appeal the September 20, 2007 decision denying Gant's § 440 motion.

On February 1, 2008, Gant notified this Court that the Second Department had denied his application for leave to appeal and further requested that his habeas petition remain in abeyance pending the outcome of his *coram nobis* application. The government did not object, and on February 25, 2008, I granted Gant's request.

On March 11, 2008, the Appellate Division denied Gant's application for a writ of error *coram nobis*, holding that he failed to establish that he was denied effective assistance of appellate counsel. *People v. Gant* (*Gant IV*), Indictment No. 3367/03 (2d Dep't Mar. 11, 2008).

In an order dated April 2, 2008, I deemed Gant's habeas petition to be amended to include all the claims raised in his § 440 motion and in his *coram nobis* application.

In a letter dated April 16, 2008, the government informed the Court that Gant had sought leave to appeal the decision dated March 11, 2008, denying his *coram nobis* application. The government inquired as to whether the Court planned to hold Gant's petition in abeyance pending the outcome of the leave application. In an order dated April 17, 2008, I denied the request to hold Gant's petition in abeyance.

On May 28, 2008, the Court of Appeals denied leave to appeal. *People v. Gant* (*Gant V*), Indictment No. 3367/03 (May 28, 2008).

## DISCUSSION

A.    *The Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (citing *Williams*, 529 U.S. at 411). Interpreting *Williams*, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* at 93 (citing *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman*:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim -- even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

261 F.3d 303, 312 (2d Cir. 2001).

B.    *Procedural Default*

Actual and explicit reliance upon a procedural default to dispose of a claim in state court constitutes "adequate and independent state ground" for the judgment, prohibiting federal habeas review. *Harris v. Reed*, 489 U.S. 255, 261 (1989); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995); *see also Coleman v. Thompson*, 501 U.S. 722, 744, 750 (1991) (noting the state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct [their] own errors"); *but see Lee v. Kemna*, 534 U.S. 362, 376, 381 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question").

Where the state appellate court rejects a state prisoner's claim as procedurally defaulted, the claim may be considered on federal habeas review only upon a showing of cause and prejudice, or upon a showing that a miscarriage of justice will result if the claim is not reviewed. *Coleman*, 501 U.S. at 750; *Teague v. Lane*, 489 U.S. 288, 298 (1989). A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably

available to counsel . . . or that some interference by officials . . . made compliance impracticable." *Coleman*, 501 U.S. at 753 (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

If the petitioner cannot show cause and prejudice, his procedural default may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This fundamental miscarriage of justice exception to the procedural default rule is "extremely rare," and should be applied only in "extraordinary circumstances." *Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003) (citing *Schlup*, 513 U.S. at 321-22).

C.       *Gant's Claims*

1.       *The Identification Procedure*

Gant challenges the identification of him at trial by St. Leger and Radin. He contends that it was error to permit those identifications when neither complainant testified at the *Wade* hearing to assess whether the pre-trial identification was in fact unduly suggestive. If pretrial identification procedures are impermissibly suggestive, due process requires the exclusion of the identification testimony unless its reliability is established through independent evidence. *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *see also Stovall v. Denno*, 388 U.S. 293, 301-02 (1967) (holding that the court must determine from the totality of the

circumstances whether identification "was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law"). Gant raised this claim on direct appeal, and it was rejected on the merits. He again raised identification claims in his § 440 motion, and the court rejected his claim as beyond the reviewing power of the court because the issues had been previously determined on direct appeal. *Gant III*, No. 3367/03, slip.op. at 2. The state court's rejection of this claim was neither contrary to nor an unreasonable application of federal law.

When a witness has made a pretrial identification, a challenge to that identification and to an in-court identification of the defendant at trial triggers "a one-step or two-step inquiry." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). The first step is to determine whether pretrial identification procedures were unnecessarily suggestive. *Id.* If they were not, the challenge is denied, and the reliability of the identification is a question only for the jury. *See Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir. 1986). If the procedures were unnecessarily suggestive, the second step is to determine whether the identification testimony is nevertheless admissible because it is "independently reliable rather than the product of the earlier suggestive procedures." *Maldonado-Rivera*, 922 F.2d at 973.[2] A "*Wade* hearing" is a pretrial hearing held to determine whether identification procedures were unduly suggestive. *See United States v. Wade*, 388 U.S. 218, 232 (1967) (holding that a post-indictment lineup is a critical stage requiring counsel's presence).

In this case, Detective DeVepchis testified about the pretrial identification procedure. His testimony did not include any facts indicating that the procedure was unduly suggestive. Gant argues that he was nevertheless entitled to compel the complainants to testify.

---

[2] This discussion borrows heavily from Gordon Mehler, John Gleeson & David C. James, *Federal Criminal Practice: A Second Circuit Handbook* 422 (2006).

He claims that DeVepchis had insufficient knowledge of the conversations that may have taken place among the complainants before the identifications took place. Gant contends there is a possibility that the complainants discussed the features of the perpetrator, influencing their identifications. He further argues that compelling the complainants to testify at the *Wade* hearing would have allowed him the opportunity to fully explore whether the pre-trial identification procedures themselves were unduly suggestive. In denying him this opportunity, he asserts, the hearing court violated his due process rights.

Under New York law, the defendant who challenges a pretrial identification procedure bears the burden of proving the challenged procedure was unconstitutional. *See People v. Berrios*, 28 N.Y.2d 361 (1971). There is no absolute right to compel a complainant to testify at a *Wade* hearing:

> [A]s at trial, any right of compulsory process at a *Wade* hearing may be outweighed by countervailing policy concerns, properly within the discretion and control of the hearing Judge. To hold otherwise would . . . only encourage the misuse of *Wade* hearings. To accord every defendant an absolute right to call an identifying witness at a *Wade* hearing would enable defendants to harass identifying witnesses and to transform the hearing into a discovery proceeding neither authorized nor contemplated by the Legislature.

*Chipp*, 75 N.Y.2d at 337. Mere speculation, absent additional proof, is not sufficient to compel the complainants to testify. *Id.* at 338.

Nor is there a federal right to have identifying witnesses testify at such a hearing. In that setting as well, the risk of harassment of such witnesses militates against an unconditional right to call them to the stand. *Booker v. Ricks*, No. 02-cv-6456, 2006 WL 2239243 (E.D.N.Y. Aug. 4, 2006); s*ee also Rivalta v. Artuz*, No. 96-CV-8043, 1997 WL 401819 (S.D.N.Y. July 16, 1997) (habeas petitioner not denied due process when the *Wade* hearing court did not compel complainant testimony).

Gant's reliance on *People v. Ocasio*, 520 N.Y.S. 2d 620 (2d Dep't 1987), is unavailing. In that case, the detective's testimony left open the possibility that a witness who had already viewed the array influenced another witness's identification of the defendant. Here, the detective's testimony did no such thing. Though it would have been prudent to instruct the complainants not to discuss their recollections of the person who robbed them or the lineup itself, the failure to do so, without more, does not call into the question the propriety of the lineup procedures in this case. Similarly, the fact that the detective could not testify as to the content of the complainants' communications among one another before they viewed the lineup does not signal that the procedures used were unduly suggestive. I also note that some steps had been taken to minimize the risk of taint -- those who viewed the lineup were then placed in a separate room from those who had not, and the identifications were made separately.

In sum, there was no error in the hearing court's decision to deny Gant's motion to compel the complainants to testify. At the very least, it cannot be said that the state court's ruling to that effect was contrary to or an unreasonable application of, clearly established Federal law.

2. *Ineffective Assistance of Trial Counsel*

Gant argues that trial counsel was ineffective because he failed to (1) reopen the *Wade* hearing because a witness testified that a police officer had alerted her to the suspect's presence in the lineup; (2) request an unredacted copy of the Unusual Occurrence Report; (3) present a compelling mistaken identification defense; (4) impeach the complainants with prior inconsistent statements; (5) interview the three complainants with respect to their initial descriptions of Gant, the nature of their conversations with the police prior to Gant's lineup, and

the circumstances regarding their failure to sign the line-up report; and (6) interview alleged eyewitnesses who would have testified that Gant did not commit the robberies.

The Supreme Court has established the following standard for claims that defense counsel provided ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

In assessing whether counsel's performance was deficient, judicial scrutiny "must be highly deferential," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted); *accord Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998); *see also Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*) ("[C]ounsel has wide latitude in deciding how best to represent a client. . . ."). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct,"

*Wiggins*, 539 U.S. at 521, instead emphasizing that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms,' " *id.* (quoting *Strickland*, 466 U.S. at 688), which requires "a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins*, 539 U.S. at 523 (quoting *Strickland*, 466 U.S. at 689).

To establish the required "reasonable probability" that counsel's errors changed the outcome of the case, the petitioner must show not just "some conceivable effect," *Strickland*, 466 U.S. at 693, but rather "a probability sufficient to undermine confidence in the outcome," *id.* at 694. This determination, unlike the determination whether counsel's performance was deficient, may be made with the benefit of hindsight. *Lockhart v. Fretwell*, 506 U.S. 364, 371-73 (1993).

All but the last of Gant's ineffective assistance of counsel claims are unexhausted because Gant could have raised them on direct appeal but failed to do so. Accordingly, the claims are procedurally barred. *See Aparcio v. Artuz*, 9 F.3d 78, 90 (2d Cir. 2000) ("[W]hen 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present these claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts must also deem the claims procedurally defaulted." (quoting *Coleman*, 501 U.S. at 735 n.1)). Gant has not shown cause for the default, or prejudice resulting therefrom, nor has he shown that a miscarriage of justice would result if the claims were not reviewed. Accordingly, the claims are denied. These claims are without merit.[3]

Gant claims that the counsel should have moved to re-open the *Wade* hearing because one of the witnesses testified at trial that the police told her that a suspect was in

---

[3]     Therefore, I need not address the fact that at least some of the claims appear to be procedurally barred.

custody.  However, under New York law "[k]nowledge by a complainant that the suspect is in a lineup does not, of itself, taint the lineup."  *See Jenkins v. City of New York*, 478 F.3d 76, 92 (2d Cir. 1007) (quoting *People v. Ferrer*, 613 N.Y.S. 2d 865 (1st Dep't 1994); *see also Hodge v. Henderson*, 761 F. Supp. 993, 1006 (S.D.N.Y. 1990), *aff'd*, 929 F.2d 61 (2d Cir. 1991) ("[I]t is implicit in the viewing of a lineup that a suspect might appear; this knowledge alone is insufficient to pose a substantial likelihood of misidentification.").  The § 440 court properly held that the reopening of the *Wade* hearing was therefore not warranted in this case.  Accordingly, trial counsel was not ineffective for failing to seek such relief.

Gant's second ineffective assistance claim -- that counsel failed to request an unredacted copy of the Unusual Occurrence Report (the "Report") -- is likewise without merit.  Gant contends that because two people were initially arrested in connection with the robberies (as indicated in the Report), there is a probability that someone resembling Gant actually committed the crimes for which he was convicted.  A review of the Report, however, does not support Gant's claim.  The Report reveals that the car used to commit the robberies was on loan to both the defendant and the other person who was apprehended (whose name is redacted on the Report).  It also indicates that Gant was positively identified in three of the robberies; that the car was also positively identified as the car used in the robberies; and that Gant's fingerprints were recovered from the car.  Gov't Mem. Opp. § 440 Mot. Ex. A.  The police used the car's license plate to narrow the field of possible perpetrators.  The redacted suspect was merely another person whose name was on the car loan.  As the § 440 court correctly held, Gant's claim that the report suggests that someone resembling him committed the robberies was pure speculation.  Trial counsel was therefore not ineffective for failing to procure an unredacted version of the report.

Gant's third claim -- that he was denied effective assistance of trial counsel because counsel failed to present a compelling misidentification defense -- is meritless. As the § 440 court held, the record reveals that counsel presented a zealous defense, raising issues of mistaken identification at all stages of the proceedings, including during the voir dire, *see* Trial Tr. 118-120 ("We talk about hearing the truth. And as I said before, this is really about an identification"); during opening statements, *see* Trial Tr. 215-16 ("What the evidence is going to show you [is t]hat the police had a certain identification procedure and that some of these identification procedures were, we believe unduly subjective."); during cross-examination of witnesses, *see* Trial Tr. 312-316 (cross-examining DeVepchis on line-up procedures); and during summation, *see* Trial Tr. 388 ("It comes down to identification. . . . You have people who were not sure of their identifications and made errors. And when you have errors of that magnitude, I submit to you, you have reasonable doubt.").

Gant's fourth ineffective assistance claim is that his lawyer failed to impeach the complainants with their prior inconsistent statements. He argues that the "failure of trial counsel to confront Jennifer Way and Susan Radin with their prior inconsistent statements given to the police within minutes after the robberies is simply *inexcusable.*" Mem. Supp. § 440 Mot. 12 (emphasis in original). He further contends that there was no strategic or tactical justification for counsel's failure to impeach the reliability of the identification testimony. The § 440 court noted that this contention should have been raised on direct appeal, but then reviewed the claim on the merits, holding that "any failure to impeach complainants . . . did not deny defendant a fair trial, in light of the Jennifer Way robbery acquittal and the strong evidence of defendant's guilt, including recovery of defendant's fingerprint in the described getaway car." This decision was not an unreasonable application of federal law.

Gant's fifth claim -- that trial counsel was ineffective because counsel failed to interview the complainants before trial regarding their initial descriptions, the nature of their conversations with the police prior to the lineup, and the circumstances regarding their failure to sign the lineup report -- is without merit. While failing to interview a complainant prior to trial in some circumstances can amount to ineffective assistance of counsel, *see, e.g., Schulz v. Marshall*, 528 F. Supp. 2d 77, 95 (E.D.N.Y. 2007) (counsel's failure to interview a critical witness prior to trial amounted to a constitutional deficiency under *Strickland* based on the victim's post-trial affidavit that the victim did not believe that the petitioner committed the crime), Gant offers only a conclusory assertion that counsel's failure to interview the complainants was ineffective. He does not argue how interviewing the complainants prior to trial (assuming they would have agreed to such an interview) would have been favorable to him or resulted in an acquittal. *See Matura v. United States*, 875 F. Supp. 235, 237 (S.D.N.Y. 1995) ("Petitioner's bald assertion that counsel should have conducted a more thorough pre-trial investigation fails to overcome the presumption that counsel acted reasonably."). Furthermore, to the extent that Gant is arguing that counsel should have been able to interview the complainants during the *Wade* hearing, that contention is unpersuasive in light of the discussion in Part C.1, *supra*.

Finally, Gant claims that trial counsel was ineffective for failing to interview material witnesses whose testimony would have exculpated Gant. The § 440 court denied this claim on the merits, and that decision was neither contrary to nor an unreasonable application of clearly established federal law. Gant does not specify who could have offered such exculpatory testimony, nor does he specify what these unnamed witnesses would have testified about. Vague claims that counsel failed to call witnesses who would have been helpful to the defense do not

support an ineffective assistance of counsel claim. *Morales v. United States*, 199 F.3d 1322 (2d Cir. 1999); *see also Farr v. Grenier*, No. 01-CV-6921, 2007 WL 1094160, at *32 (E.D.N.Y. Apr. 10, 2007).

    3.    *Ineffective Assistance of Appellate Counsel*

    Gant claims that he received ineffective assistance of appellate counsel because appellate counsel failed to argue that trial counsel was ineffective for (1) improperly waiving Gant's right to testify before the Grand Jury at his proceedings against him; (2) delivering a "weak" opening statement resulting from counsel's failure to investigate Gant's alibi claim; (3) failing to properly advise Gant about the strengths and weaknesses of his case and also about the consequences of refusing a plea offer and proceeding to trial instead; (4) failing to either vigorously cross-examine or impeach the eyewitnesses who had testified against him; and (5) allowing Gant to be improperly adjudicated as a persistent violent felony offender at his sentencing proceedings.

    Although the Supreme Court formulated the *Strickland* test described above in the context of examining a claim of ineffective assistance of trial counsel, the same test applies to claims regarding the performance of appellate counsel. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994); *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992). Appellate counsel need not present every nonfrivolous argument that could be made. *See Mayo*, 13 F.3d at 533 (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)); *see also Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategy choices any more than it should do so in evaluating the performance of trial counsel. *See Mayo*, 13 F.3d at 533 (citing *Lockhart v. Fretwell*, 506 U.S.

364, 372 (1993)).  A petitioner, however, may establish constitutionally inadequate performance

if he shows that his appellate counsel omitted material and obvious issues while pursuing matters

that were patently and significantly weaker.  *Cf. Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir.

1998) ("[R]elief may be warranted when a decision by counsel cannot be justified as a result of

some kind of plausible trial strategy.").

   Gant raised his claims in his application for a writ of error c*oram nobis*.  The

Appellate Division denied Gant's motion on the merits, stating that he had "failed to establish

that he was denied the effective assistance of appellate counsel."  *Gant IV*, No. 3367/33, slip op.

at 1.  Gant has failed to show that the state court's decision rejecting his ineffective assistance

claim was wrong, let alone unreasonable.

   Gant's claim that he received ineffective assistance of appellate counsel because

counsel failed to argue on direct appeal that trial counsel deprived Gant of his right to testify in

the Grand Jury is meritless.   "New York courts have consistently held that counsel's failure to

ensure that the defendant testifies before the grand jury does not amount to ineffective assistance

of counsel."  *Davis v. Montello*, 42 F. App'x 482, 491 (2d Cir. 2002); *see also People v. Hamlin,*

544 N.Y.S.2d 859, 860 (2d Dep't 1989).  Even if there were error, "[a]ny error in the grand jury

proceeding connected with the charging decisions [is] harmless beyond a reasonable doubt."

*United States v. Mechanik,* 475 U.S. 66, 70 (1986).  Indeed, "federal grand jury rights are not

cognizable on direct appeal where rendered harmless by a petit jury, [and] similar claims

concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in

a federal court."  *Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir. 1989).

   The second and third claims involve matters that are outside of the record.

Because these issues were not reviewable on direct appeal, appellate counsel could not have been

ineffective for failing to raise them. *See Young v. McGinnis*, 411 F. Supp. 2d 278, 334 (E.D.N.Y. 2006) (appellate counsel not ineffective for failing to raise on direct appeal a claim that involved matters dehors the record).

Fourth, Gant's argument that counsel failed to vigorously cross-examine the witnesses is belied by the record. His attorney ably questioned the witnesses and used their answers to argue persuasively that the identification procedure was flawed. Significantly, the jury acquitted Gant of one of the robbery charges. Appellate counsel was not ineffective for failing to raise this claim.

Fifth, with regard to Gant's claim that appellate counsel was ineffective for failing to raise a claim that trial counsel was ineffective for failing to impeach the witnesses, I have already found in the foregoing discussion that the underlying claim is meritless, and thus appellate counsel was not ineffective for failing to raise it on appeal as an ineffective assistance claim. *See, e.g.*, *Rolling v. Fischer*, 433 F. Supp. 2d 336, 351 (S.D.N.Y. 2006) ("[T]here can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless.").

Gant's final argument is that appellate counsel was ineffective in failing to claim on appeal that trial counsel was ineffective for failing to challenge Gant's status as a persistent violent felony offender. The record reflects that Gant had three violent felony convictions prior to this conviction. Gant did not dispute at sentencing that he had been convicted of two class D violent felonies between 1982 and 1993, nor did he challenge the constitutionality of those convictions. Counsel did argue that the statute's requirement that the prior felony have occurred within 10 years of the offense of conviction[4] should run from the date of the crime itself and not

---

[4]          *See* N.Y. Penal Law § 70.04(1)(b)(iv) ("[S]entence must have been imposed not more than ten years before commission of the felony of which the defendant presently stands convicted.").

from the date of sentencing, but he later conceded that the statute is clear that the time runs from the sentencing date.   To the extent that Gant is now arguing that he had only one violent felony conviction at the time of sentencing, that claim is clearly contradicted by the record.  *See* Sent'g Tr. 8.  Gant does not allege that he had apprised appellate counsel of his belief that he should not have been sentenced as a persistent violent felony offender.  In sum, appellate counsel was not ineffective for failing to raise this issue on appeal.

CONCLUSION

For the reasons set forth, the petition is denied.  As Gant has not made a substantial showing that he was denied a constitutional right, a certificate of appealability shall not issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 3, 2008
　　　Brooklyn, New York